IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 05-cv-01510-CMA-MJW

DENISE SOLANO,

    Plaintiff,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,

    Defendant.

---

**ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF AND PLAINTIFF-IN-INTERVENTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant American Bankers Insurance Company of Florida's Motion for Summary Judgment (Doc. # 149) and the Motion for Partial Summary Judgment (Doc. # 150) filed by Plaintiff Denise Solano and Plaintiff-In-Intervention Albert Hoffman (in discussing their Motion, Ms. Solano and Mr. Hoffman will be referred to collectively as "Plaintiff").  For the following reasons, Defendant's Motion is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

## INTRODUCTION

This is an insurance dispute.  On February 18, 2003, Plaintiff's husband, Dion Solano, purchased automobile insurance from Defendant.  Defendant issued Policy No. CO-0086648 ("Policy"), which is the subject of this lawsuit.  Less than a month later, on March 2, 2003, Plaintiff suffered personal injuries in an automobile accident while

riding as a passenger in her husband's Mercury Sable.  Plaintiff received personal injury protection ("PIP") benefits under the Policy until they expired on May 6, 2004.

At the time Mr. Solano purchased the Policy, the Colorado Auto Accident Reparations Act ("CAARA") required drivers to retain a minimum amount of PIP coverage in their auto insurance policies.  CAARA also required insurers to "offer" enhanced personal injury protection ("EPIP") coverage to their insureds.  Courts construing the EPIP provisions of CAARA have ruled that an insurer's failure to make the appropriate offer of EPIP coverage requires that the policy be reformed to incorporate the statutory EPIP coverage.  Under this line of precedent, Plaintiff seeks a declaratory judgment reforming the Policy so that she may recover EPIP benefits.  Plaintiff also seeks additional damages for breach and bad faith breach of the "reformed" insurance contract.

The procedural history of this case is rather long, but unnecessary here for disposition of the instant motions.  All that is relevant at this point is that both parties moved for summary judgment.  Defendant seeks dismissal of all of Plaintiff's claims and Plaintiff seeks summary judgment in her favor on the declaratory judgment claim only.

## RELEVANT UNDISPUTED FACTS

When dealing with PIP/EPIP lawsuits, the facts surrounding the purchase of the policy and the purported offer of EPIP coverage are critical.  This case is no different.  Mr. Solano purchased the Policy on February 18, 2003, from a National Insurance Center branch store located in Lakewood, Colorado.  National Insurance Centers were

Defendant's captive sales outlets and both companies were under the common ownership of Thaxton RBE, a holding company. (Doc. # 161, Defs. Reply at 4.) Mr. Solano purchased the state minimum PIP coverage. (Doc. # 152, Pls. Response at 4; Defs. Reply at 10.)

When he purchased the Policy, Mr. Solano received Defendant's PIP Selection Form. (Doc. # 149, Defs. Motion at Ex. A-1.) The PIP Selection Form contained details on multiple options for PIP coverage and described the varying levels of coverage. (*Id.*) The PIP Option Form, which immediately followed the PIP Selection Form in the documents provided to Mr. Solano, listed 36 different PIP coverage options and included further explanation of the PIP coverage levels described in the PIP Selection Form. (*Id.*) The PIP Option Form was laid out in a table format with pricing information that corresponded to the different level of PIP coverage. (*Id.*) Mr. Solano admits that he saw these forms and the PIP coverage options in the Option Form table. (Pls. Response at 4.) Indeed, although Mr. Solano stated that he did not read any of the insurance documents provided to him (*id.*), he selected "Basic PPO with Option D - Limited Benefits," on the Option Form and signed the Form. (Defs. Motion at Ex. A-1.) He also initialed the Policy Declaration in a spot indicating that he had received "sufficient explanatory information regarding the PIP/PPO Option . . . ." (*Id.*) Despite seeing and signing the Policy forms, Mr. Solano did not ask any questions of the customer service representative, Gloria Nieto, when he purchased the Policy. (Pls. Response at 5.)

Against this relatively clear written record, Plaintiff attempts to muddy the waters surrounding the purchase of the Policy and the offer of EPIP coverage by introducing testimony from National Insurance Center sales representatives Lindsey Fisher and Desiree Albertson.  Ms. Fisher stated that her job training instructed her ***not to*** offer EPIP coverage, because it would cost the company too much money.  (*Id.* at 6.) Ms. Fisher also stated that store managers were instructed not to offer EPIP coverage and that she witnessed agents and managers adhering to this policy on multiple occasions.  (*Id.*)  Ms. Albertson testified that customer service representatives at each and every National Insurance Center followed the same script when selling an auto insurance policy.  (Defs. Reply at 6.)

However, neither Ms. Fisher nor Ms. Albertson worked with or trained agents at the Lakewood store where Mr. Solano purchased the Policy and neither agent appears to have had any interaction with Plaintiff or her husband.  Furthermore, the Lakewood store manager, Yazmin Gutierrez, testified that it was store policy to offer EPIP coverage to every customer.  (*Id.*)  Ms. Gutierrez stated that enhanced policies actually made the company more money.  (*Id.*)  Additionally, Ms. Fisher stated that, despite receiving negative instructions regarding EPIP coverage offers, each agent received a copy of the auto policy declaration, which contained the above-described written PIP Selection and Option Forms for use with customers.  (*Id.*)  Neither party has presented testimony from Ms. Nieto, the customer service representative who actually sold the Policy to Mr. Solano.

## STANDARD OF REVIEW

Courts should grant summary judgment if the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Deepwater Investments, Ltd. v. Jackson Hold Ski Corp.*, 938 F.2d 1105, 1110-11 (10th Cir. 1991); *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 726 (10th Cir. 1991). The moving party bears the initial burden of demonstrating the lack of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must respond with evidence sufficient to create a genuine issue of material fact for trial. *Id.* at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To overcome a motion for summary judgment, the non-moving party must present enough evidence to allow a reasonable jury to find in its favor. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). In analyzing the evidence on a motion for summary judgment, a court should view the factual record and draw reasonable inferences in favor of the non-moving party. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1995).

## ANALYSIS

The Court now turns to the question of whether either party has satisfied its burden under the aforementioned facts and standard of review.

**I.     APPLICABLE LAW**

This is a diversity case, so Colorado law will apply.  The Colorado legislature enacted CAARA to ensure that Colorado consumers received appropriate treatment from auto insurers in the event of an auto accident.  *See Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1165 (10th Cir. 2007).[1]  To help accomplish this goal, C.R.S. § 10-4-710 states in relevant part:

> Every insurer **shall offer** for inclusion in a complying policy, in addition to the coverages described in section 10-4-706 [basic PIP coverage], at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

C.R.S. § 10-4-710(2)(a) (emphasis added).  The coverage described in this section has become known as advanced, enhanced or additional PIP coverage.  When put into the context of this case, section 10-4-710(2)(a) required insurers to offer EPIP coverage to their insureds in addition to the legal minimum PIP coverage described by C.R.S. § 10-4-706.  *See Fazio v. State Farm Mut. Auto. Ins. Co.*, 55 P.3d 229, 231 (Colo. Ct. App. 2002) ("The plain meaning of this language [C.R.S. § 10-4-710(2)(a)] is that the named

---

[1] The Colorado legislature repealed the CAARA provision at issue in 2003, after the events giving rise to this lawsuit took place.

insured who has minimum PIP coverage under § 10-4-706 must be offered an opportunity to purchase certain types of enhanced PIP coverage.").

In *Brennan v. Farmers Alliance Mut. Ins. Co.*, the Colorado Court of Appeals held that when an insurer fails to "offer" EPIP coverage in accordance with C.R.S. § 10-4-710, the policy in question should be reformed to incorporate the statutorily-required EPIP coverage. *See* 961 P.2d at 554 (Colo. Ct. App. 1998) ("[W]hen, as here, an insurer fails to offer the insured optional coverage that satisfies the No-Fault Act [a.k.a. CAARA], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy.") *Brennan* and other decisions like it, *see, e.g., Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. Ct. App. 1996), have spawned numerous suits similar to the case at bar. In most of these cases, a key issue was the sufficiency or reasonableness of the EPIP offer made by the insurer. *See, e.g., Reid*, 499 F.3d at 1168-70; *Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 733-35 (10th Cir. 2007); *Munger v. Farmers Ins. Exch.*, 174 P.3d 832, 834-37 (Colo. Ct. App. 2007); *Jewett v. American Std. Ins. Co. of Wis.*, 178 P.3d 1235, 1239-40 (Colo. Ct. App. 2007).

CAARA does not define the term "offer" as it is used in C.R.S. § 10-4-710. Therefore, to determine whether an insurer's offer complies with C.R.S. § 10-4-710, the 10th Circuit and the Colorado Court of Appeals have turned to the commercial reasonableness test enunciated by the Colorado Supreme Court in an earlier, non-PIP insurance case, *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992). *See Reid,* 499

7

F.3d at 1168-70 (citing *Parfrey*); *Padhiar*, 479 F.3d at 733-35 (same); *Munger*, 174 P.3d at 834 (same).  But see *Lust v. State Farm Mut. Auto. Ins. Co.*, 412 F. Supp. 2d 1185, 1191-92 (D. Colo. 2006) (holding that plaintiff's reliance on *Parfrey* test "is unavailing"); *May v. Travelers Prop. Cas. Co.*, 2006 WL 2784864, at *3 (D. Colo. Sept. 26, 2006) (questioning "whether the commercial reasonableness test set for in *Parfrey* is the correct standard under which to evaluate" an offer under C.R.S. § 10-4-710).[2]  Although *Parfrey* did not concern C.R.S. § 10-4-710(a)(2), the majority of courts to address the issue have relied on it to guide the determination of whether an insurer has made a statutorily compliant offer under section 710.

The *Parfrey* test asks whether an insurer's offer and description of EPIP coverage was reasonably calculated to permit the insured to make an informed decision regarding basic PIP versus EPIP coverage.  See *Reid*, 499 F.3d at 1167 (citing *Parfrey*, 830 P.2d at 913); *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 742 (10th Cir. 2007) (same).  To answer this question, *Parfrey* provides a set of factors under which courts can analyze an offer of EPIP coverage.  The factors include:

> the clarity with which the purpose of. . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the

---

[2]  Despite the reluctance by previous courts in this district to adopt *Parfrey*, this Court views the Colorado Court of Appeals' recent decision in *Munger* as instructive on the issue. See *Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1128 (10th Cir. 2005) (noting that decisions of state intermediate courts, although not controlling, may not be disregarded unless the federal court is convinced by other persuasive data that the state's highest court would rule otherwise); *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.*, 454 F.3d 1128, 1134 (10th Cir. 2006) (noting that no deference is given to federal district court's interpretation of state law). So, this Court will also rely on *Parfrey*.

> different levels of . . . coverage would be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer

*Parfrey*, 830 P.2d at 913. Although these factors offer guidance, the final decision regarding the propriety of an insurer's EPIP offer is based on the "totality of the circumstances" surrounding the offer. *Id.* at 914.

## II. DEFENDANT'S EPIP OFFER TO MR. SOLANO COMPLIED WITH C.R.S. § 10-710(a)(2).

In this case, Defendant provided a multi-page written explanation of PIP and EPIP coverage levels to Mr. Solano at the time he purchased the Policy. Defendant's written forms and tables were clear, concise, and thorough with respect to the differences in available coverage. For example, the PIP Selection Form provided to Mr. Solano described the different options, "A, B, C or D," that were available. Additionally, the PIP Option Form, which included pricing information on 36 different levels of coverage, would easily allow a reasonable insurance customer to discern how the different PIP options would affect his or her policy premium. Moreover, Mr. Solano was free to take the PIP information with him if he chose not to read the documents at the time he purchased the Policy. Thus, the written PIP information supplied to Mr. Solano can be distinguished from the PIP data table at issue in *Morris v. Travelers Indem. Co.*, 518 F.3d 755 (10th Cir. 2008), in that the multiple written forms in the instant case convey far more detail and options regarding the differences in PIP coverage and pricing than the rather vague table in *Morris.*

Plaintiff argues that a genuine issue of fact exists regarding Defendant's alleged corporate policy against allowing National Insurance Center agents to make EPIP offers. However, the testimony upon which Plaintiff relies, *i.e.,* Ms. Fisher and Ms. Albertson's testimony regarding training and events at other stores, is irrelevant to the offer at issue in this case. Also, because Plaintiff could not tie Ms. Fisher and Ms. Albertson's testimony directly to Mr. Solano's purchase or to the procedures at the Lakewood store, Ms. Gutierrez' testimony that **it was** store policy in Lakewood to offer EPIP coverage is essentially undisputed. Further, Ms. Fisher admitted that Defendant provided all of its agents with the written PIP forms to use with customers. Thus, even if her training program omitted or contradicted the EPIP offer information in those forms, the customers always had written explanation of the coverage levels available.

Finally, although Mr. Solano's personal understanding of the EPIP offer does not factor heavily into the objective *Parfrey* factors, the undisputed facts reflect that Mr. Solano understood that Defendant made an offer of EPIP coverage. This is true even if he now claims to be unable to remember what was said when he purchased the Policy. For example, whether he read the Policy documents or not, Mr. Solano acknowledged in his deposition that he saw the PIP Selection and Option Forms and he cannot deny that he signed the PIP Option Form and initialed the Policy Declaration, indicating that Defendant had provided him with "sufficient explanatory information regarding the PIP/PPO Option." The fact that Mr. Solano does not remember what Ms. Nieto, the National Insurance Center sales agent, told him when he purchased

10

the Policy does not create an issue of disputed fact. This is especially true when Mr. Solano's lack of recall is contrasted against the affirmative testimony of Ms. Gutierrez, the store manager, who testified that it was Lakewood store policy for agents to describe and offer EPIP coverage for customers. Although Mr. Solano's subjective understanding of the EPIP offer does not weigh heavily in the *Parfrey* factors, it constitutes another reason under the totality of the circumstances that Defendant made a statutorily compliant offer in this case.

## CONCLUSION

In sum, there is no genuine question of material fact on the sole issue in this case. Because, under the totality of the circumstances test, Defendant offered EPIP coverage to Mr. Solano in a manner sufficient to allow him to make an informed decision regarding his purchase, judgment as a matter of law in Defendant's favor is appropriate here.

Accordingly, Defendant's Motion for Summary Judgment (Doc. # 149) is GRANTED;

Plaintiff's Motion for Partial Summary Judgment (Doc. # 150) is DENIED; and

It is FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE pursuant to the terms of this ORDER and any pending motions are hereby DENIED AS MOOT.

DATED: February __27__, 2009

BY THE COURT:

*Christine M. Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge